FOREST OIL CO. v. CRAWFORD.

(Circuit Court of Appeals, Third Circuit. November 27, 1896.)

No. 13.

1 DEVISES—MEANING OF "CHILDREN."

"Children," as ordinarily used in devises, is a word of personal description, pointing to individual acquisition, and, so far as designation goes, differs in

no way from the mention of individuals by name. It is not a word of limitation, does not point to hereditable succession, and is employed in contradistinction to "issue" and "heirs of the body."

**2. SAME—BURDEN OF PROOF.**
A person denying to the word "children" its ordinary import, of one who takes by purchase, assumes the burden of showing cogent and convincing reasons therefor, to be gathered from the four corners of the will.

**3. SAME—LIFE ESTATE—REMAINDERS.**
A devise to testator's son by name, "and to his children," *held* to give a life estate to the son, and an estate in remainder to his children living at testator's death, which afterwards opened to let in after-born children.

In Error to the Circuit Court of the United States for the Western District of Pennsylvania.

This was an action of ejectment, brought by Oliver P. Crawford, a citizen and resident of the state of Nevada, against the Forest Oil Company, a corporation created by the state of Pennsylvania, to recover an undivided one-thirteenth interest in a tract of land containing 105 acres and 83½ perches, and situate in Mt. Pleasant township, Washington county, Pa. By stipulation a jury was waived, and the case was tried to the court, which, after making findings of fact, and announcing its conclusions of law thereon, gave judgment for plaintiff. 77 Fed. 534. The defendant has appealed.

The findings of fact were as follows:

(1) The parties to this suit, their residence, and the subject-matter of the action are as stated above. The interest sought to be thereby recovered exceeds $2,000 in value. The defendant corporation was in possession of the land for oil and gas purposes when suit was brought. (2) William Crawford, the grandfather of the plaintiff, was the owner in fee of the land involved in this suit, and, being seised thereof, made his will, dated February 27, 1843, and died in 1846. His will was duly admitted to probate by the register of Washington county, Pa., and a copy thereof, marked "Exhibit A," is attached hereto, and made part of these findings. By said will he devised the premises in dispute as follows: "I will and devise to my son Matthew and to his children my old farm, adjoining Mark Kelso's and others', provided, however, at the end of one year after my decease, or when called upon for it, he shall pay to his mother the sum of three hundred dollars in addition to the sum as above bequeathed to her; and he shall pay, also, to my son Oliver's child, when it shall become of age, the sum of two hundred dollars; but, if the said child shall die before it shall become of age, I will that he be altogether exonerated from the payment of the said two hundred dollars." (3) That said Matthew Crawford, the devisee named, had, at the time his father executed said will, seven living children, of whom the plaintiff was one. After the making of said will, and before the death of William Crawford, the testator, another child was born to said Matthew, and after the death of the testator five other children were born to Matthew. Matthew Crawford died September 30, 1894, leaving to survive him twelve of said children, and the children of his son James Crawford, who died about 1890. (4) Matthew Crawford, on December 4, 1890, in consideration of $500 in cash, a royalty of one-eighth the oil, and $600 for each gas well utilized, executed to T. J. Vandergrift a lease, for oil and gas purposes, of land which included the premises in dispute. A copy of said lease, marked "Exhibit B," is hereto attached, and made part of these findings. This lease was duly assigned by T. J. Vandergrift to the Woodland Oil Company, which company, on March 20, 1892, entered upon said premises, drilled several wells, and obtained oil in paying quantities. On November 27, 1894, the Woodland Oil Company sold and transferred the lease and wells to the Forest Oil Company, the defendant, which company has since claimed and held exclusive possession of the land occupied in operating the wells under the lease. During the lifetime of Matthew Crawford the royalty arising under the lease was paid to him.

The will of William Crawford, attached as an exhibit to the second finding of fact, was in full as follows:

I, William Crawford, of Mount Pleasant township, in Washington county and state of Pennsylvania, do make this, my last will and testament, as follows, viz.: I will and bequeath to my wife, Nancy, the sum of three thousand dollars in cash, to be paid her at the expiration of one year after my decease, and I will to her the whole of my household goods and furniture, and her choice of the cows. I allow to her also the use of the dwelling house in which we now live, together with the use of the garden and of half the orchard during her life. It is my will, also, that she be found in a quiet horse at all times when she wants to ride, and that she be always kept in a good cow, and that the cow be always kept and taken care of for her, and also that she be always kept in plenty of wood ready cut, and in as much coal as she can make use of, and, if necessary, that her fires be put on for her. And I will, also, that she be furnished annually with 15 lbs. of hackled flax, 15 lbs. of wool, 3 cwt. of pork, 50 lbs. of sugar, 30 lbs. of coffee, 8 lbs. of tea, 10 cwt. of flour, one barrel salt, 30 bushels of corn meal, and 15 bushel of potatoes; the potatoes to be holed and taken care of for her. I also will and direct that the garden be paled in, with a gate to it, and be worked for her, in the best manner, and it is my will that the above items and articles allowed and bequeathed to her be provided and furnished at the equal and joint expense of James, Thomas, and Robert. And I will and bequeath to my sons George and William, in addition to what they have already received, the whole amount of a note in my possession against George, two hundred dollars of which, with the interest thereon, I hereby direct and allow to be paid over by him to William. And I will and devise to my son Matthew and to his children my old farm, adjoining Mark Kelso and others, provided, however, at the end of one year after my decease, or when called upon for it, he shall pay to his mother the sum of three hundred dollars, in addition to the sum as above bequeathed her; and he shall pay, also, to my son Oliver's child, when it shall become of age, the sum of two hundred dollars; but if the said child shall die before it shall become of age, I will that he be altogether exonerated from the payment of the said two hundred dollars. And I will and bequeath to my daughter Margaret the sum of one thousand dollars,—one hundred thereof to be paid to her son William when of age, the balance to be loaned by my executors, and, as soon as they shall deem it expedient, the principal and interest to be expended in the purchase of real property for her use during her life, to be equally divided amongst all her children at her decease. And I will and demise to each of my sons James, Thomas, and Robert one of the three plantations belonging to me, adjoining each other, upon their paying to my executors, for the use of the estate, within one year after my decease, as follows, viz.: To my son James and to his children I give the plantation on which I now live, upon his paying the sum of two thousand dollars; to Thomas and to his children I give the lot of land formerly occupied by Thomas King, upon his paying the sum of one thousand dollars; and to Robert and to his children I give the lot of land late the estate of John Cowden, deceased, upon his paying the sum of one thousand dollars. And I will that the line between the McDowell and Cowden farms, belonging to me, remain the same as the last existing line between them, until, beginning at land of James Hogseed, and running northwards, it reaches a stone nigh a sugar tree not far from the road; from which stone northward, towards McCarty's line, I will that the line be run in such a direction as will throw two acres of woodland of the McDowell tract into the Cowden farm. And I will that, in case any one of my sons James, Thomas, or Robert shall die without issue, the land belonging to the deceased shall fall into the hands of the other two surviving and their children, upon their paying to each one of the rest of my children the sum of three hundred dollars. And I will to my son Matthew my box coat, to James my saddle bags and best straight coat and boots, to Thomas my best jacket and pantaloons, and to Robert my saddle. And I will that all the balance of my stock and other personal property, books excepted, including all the grain both in and out of the ground, be sold by my executors at public vendue, and, after all debts and bequests are fully discharged, the overplus, if any, shall be paid over to my wife, Nancy. And I will that my books be equally divided amongst all my children. And, further, it is my will, and I do hereby direct, if any one of my heirs shall enter suit at law

respecting this my last will or testament, or be at all engaged therein, in order to obtain more or anything different from what is herein demised, that he, she, or they, as the case may be, shall be forever and totally disinherited. And I do hereby nominate and appoint my son Matthew Crawford and John Reed the executors of this, my last will and testament.

In witness whereof, I do hereunto set my hand and seal the twenty-seventh day of February in the year of our Lord one thousand eight hundred and forty-three.

William Crawford. [Seal.]

Witness present:
John Cockins.
John Reed.

The court below (Buffington, District Judge) filed the following opinion and conclusions of law:

The controversy in this case turns on the proper construction of the clause of the will recited above. The plaintiff contends that by it his father, Matthew Crawford, took a life estate in the farm; that a remainder vested in the plaintiff and his brothers and sisters then living, and that this remainder opened to let in after-born children; that his father, having but a life estate, had no authority to grant a lease which would bind those in remainder; and that the exclusive right of possession is in the plaintiff and the other children of Matthew Crawford, and has been since his death. The defendants contend that Matthew Crawford took an estate in fee simple under the will, or such an estate as justified him in giving the lease he did, and the defendant is now holding the property under it. What estate did Matthew take under the clause in question? The devise is "to my son Matthew and to his children." He had six children living when the will was drawn, and seven when the testator died. Therefore the term thus used, "his children," as aptly described persons in whom the devise could vest as though they were mentioned by the testator nominative. Had the devise been to my son Matthew and to his children, Martha, Nancy, Eliza, James, William, Oliver, and Mary, beyond doubt the words "his children" would be held words of purchase, and these persons would have taken a vested estate in remainder, not mediately and by virtue of their relationship to their father as his children, but directly as devisees of the testator. Do they take otherwise, when they are simply specified as "his children," without name? In law the word "children" has, and has had, a well-defined meaning, which is found to run through the textbooks and reports, and upon the proper adherence to which meaning the stability and very existence of many titles in this commonwealth depend. Defining it from a positive standpoint, it is a word of personal description, it points to individual acquisition, and, so far as designation goes, it differs in no way from a mention of individuals by name. Defining it negatively, it is not a word of limitation; it does not point to hereditable succession; it is employed in contradistinction to the terms "issue" and "heirs of the body." These are used in creation of estates tail, and point to a contingent hereditable succession, while the term "children" is one of personal description and individual acquisition. Such definitions of the word are recognized in a long line of cases, and the term itself has grown to be a technical one, so to speak, in the law of the commonwealth. See Guthrie's Appeal, 37 Pa. St. 14; Affolter v. May, 115 Pa. St. 58, 8 Atl. 20; Huber's Appeal, 80 Pa. St. 348; Oyster v. Oyster, 100 Pa. St. 538. The natural import of the term is that of one who takes by purchase, and primarily it must be so regarded. Applying these principles of interpretation and construction to the will of William Crawford, we are justified in assuming, primarily and presumptively, that the clause in question vested an estate in remainder in the children of Matthew Crawford, and that they took as purchasers. The defendant denies to the word its ordinary meaning, and contends it was not so used by the testator. In so doing he must assume the burden of showing cogent and convincing reason to justify this departure from the ordinary and presumptively correct meaning of the word. Hayes, Estates Tail, p. 35. Or, as Guthrie's Appeal, supra, says: "Admitting, now, that the word 'children' may be construed to mean 'heirs of the body,' yet there must be an express warrant for this change of its legitimate meaning, under the hand of the author of the gift. The intention to use it as a word of limitation, contrary to its natural import, must be rendered clear by the words of the grantor or testator himself." The word "children" has

acquired a technical meaning in devises, and unless, from other inconsistent words, it is clear some different definite sense was given it by the testator, this technical meaning should be adhered to. Carroll v. Burns, 108 Pa. St. 386. That this recognized meaning has been departed from in adjudged cases is certain, but in such cases there were substantial reasons for so doing. "There are many instances in our state," says the court, in Oyster v. Oyster, supra, "when 'children' has been held to be a word of limitation; but in all of them such construction was clearly in accord with the intent of the testator, as gathered from the four corners of the will, as when 'children' has been used with 'heirs of the body' or 'issue' as its synonyms."

Approaching the inquiry before us in the light of these firmly-rooted canons of construction, we ask what reason has the testator given in his will for a departure from the meaning which the law has firmly fastened on the words he used? The devising clause is in itself complete, independent, and self-explanatory. It is not necessarily connected with or dependent upon other portions of the will, either for interpretation, certainty, or devising efficacy. The devise thus having an inherent completeness, a construction which would ingraft upon it meanings and changes based on other and wholly disconnected clauses and subjects is strained and unnatural. But a reference to other parts of the will shows no such use of words or terms as compel the substitution of the word "heirs," or "issue," for "children," in the clause in question. Clearly, the word "heir," in the concluding part of the will, was used in the broad sense of embracing all beneficiaries; and, as this included his widow and the children of his daughter Margaret, as well as testator's own children, the term "heirs" was not there used as synonymous with children. So, also, the word "issue," in the devise to James, Robert, and Thomas, was not used interchangeably and as synonymous with "children," but was broad enough to cover lineal descendants other than children as well. It is suggested, however, that the fact that Matthew's devise was coupled with the condition to pay certain legacies would vest in him a fee. We cannot assent to this. Such a contention fails to appreciate the reason and spirit of the rule which resorts to legacies to determine the quantum of the estate devised. The fact of legacies accompanying a devise is only pertinent when the estate devised is undefined, and therefore uncertain. 2 Jarm. Wills, No. 269; Hinkle's Appeal, 116 Pa. St. 498, 9 Atl. 938; Dixon v. Ramage, 2 Watts & S. 144; Burkhart v. Bucher, 2 Bin. 464. Here, however, there is no need to resort to legacies to determine the quantum of estate. By the use of the term "children," the testator vested an estate in remainder in a specified class of persons, and a precedent life estate in Matthew, their father. There is no uncertainty in either respect. If he added the payment of legacies on the estate devised to the first taker, it was simply a burden on such first taker,—not an extinction of the estate of those in remainder.

In conclusion, then, we are of opinion Matthew Crawford took a life estate in the land in question, and that his children living at the testator's death took an estate in remainder, which, under the authority of Hague v. Hague, 161 Pa. St. 646, 29 Atl. 261, and Gernet v. Lynn, 31 Pa. St. 94, opened to let in after-born children. In accordance with these views, we reach our conclusions of law:

(1) The court is of the opinion that, under the will of William Crawford, his son Matthew took an estate for life in the land in question.

(2) That, by the will of William Crawford, the plaintiff, Oliver P. Crawford, one of the children of Matthew, took an estate in remainder in the undivided one-thirteenth of the land.

(3) That said Oliver P. Crawford has shown title and right of possession to the undivided one-thirteenth part of the land in question, and is entitled to recover in this action.

In accordance, therefore, with our findings of law and fact, the court finds in favor of the plaintiff, and against the defendant, for the undivided one-thirteenth of the premises described in the writ, together with six and a quarter cents damages, and costs of suit, and judgment will be entered accordingly.

Boyd Crumrine, for plaintiff in error.

J. H. Beal, for defendant in error.

Before ACHESON and DALLAS, Circuit Judges, and WALES, District Judge.

DALLAS, Circuit Judge. William Crawford's will contains a disposition in these words:

"I will and devise to my son Matthew and to his children my old farm, adjoining Mark Kelso's and others', provided, however, at the end of one year after my decease, or when called upon for it, he shall pay to his mother the sum of three hundred dollars, in addition to the sum as above bequeathed to her; and he shall pay. also, to my son Oliver's child, when it shall become of age, the sum of two hundred dollars; but, if the said child shall die before it shall become of age, I will that he be altogether exonerated from the payment of the said two hundred dollars."

The court below, construing this clause with due reference to the entire will, held that, by virtue thereof, Matthew Crawford took a life estate, and that his children living at the testator's death took an estate in remainder, which opened to let in after-born children. The sole question before this court is as to the correctness of this interpretation, and upon that question we have no doubt whatever. The learned judge was right in accepting the decisions of the Pennsylvania supreme court as controlling. They are sufficiently referred to in his opinion, his understanding of them accords with our own, and his application of them to the matter in hand is entirely satisfactory. Therefore, the judgment is affirmed.